IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MALCOLM ALBRITTON,
#380491,
   Petitioner,

vs.          Case No. 3:07cv251/LAC/EMT

WALTER A. McNEIL,
   Respondent.
_____/

## REPORT AND RECOMMENDATION

  This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 6).  Respondent filed an answer to the petition and relevant portions of the state court record (Doc. 14).  Petitioner filed a reply (Doc. 21).

  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.  BACKGROUND AND PROCEDURAL HISTORY

  The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 14, Exhibits).  Petitioner was charged by information in the Circuit Court for Escambia County, Florida, Case No. 04-0555-CFA, with one felony count of trafficking in cocaine and one misdemeanor count of possession of cannabis (Doc. 14, Ex. A at 2).  These charges were also the basis of a violation of probation (VOP) proceeding in Case No. 02-4139-CFA (*id.* at 15–16, 20–21, 27).  Petitioner pled nolo contendere to the VOP in Case No. 02-

4139-CFA and guilty to the misdemeanor possession count in Case No. 04-0555 (*see id.* at 59–61, 112). Upon the trial court's denial of defense counsel's motion to suppress evidence relating to the trafficking count, Petitioner pled guilty to the felony trafficking count while reserving his right to appeal the denial of the motion to suppress (*id.* at 61–99, 112). On September 3, 2004, Petitioner was sentenced to twenty (20) years of imprisonment on the trafficking count in Case No. 04-0555-CFA, with 214 days of pre-sentence jail credit, and a consecutive term of five (5) years of imprisonment on the VOP, with credit for ten (10) months (*id.* at 103–06, 112–17). He was sentenced to time served on the misdemeanor counts in both cases (*id.*).

Petitioner appealed the judgment to the Florida First District Court of Appeals ("First DCA"). On July 22, 2005, the First DCA affirmed the judgment of conviction without written opinion, with the mandate issuing August 9, 2005 (Doc. 14, Ex. E, Ex. F at 96). Albritton v. State, 907 So. 2d 519 (Fla. 1st DCA July 22, 2005) (Table). Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On August 17, 2005, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 14, Ex. F at 97–110). Following a limited evidentiary hearing on one of Petitioner's claims, the trial court denied the motion in a written opinion rendered on March 10, 2006 (*id.* at 170–73). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on September 12, 2006, with the mandate issuing October 11, 2006 (Doc. 14, Ex. J). Albritton v. State, 937 So. 2d 1100 (Fla. 1st DCA Sept. 12, 2006) (Table).

On November 15, 2006, Petitioner filed a second Rule 3.850 motion (Doc. 14, Ex. K at 1–11). The trial court dismissed the motion as untimely and successive (*id.* at 22–24). Additionally, the court construed Petitioner's contention that his sentencing scoresheet was miscalculated as a claim cognizable under Rule 3.800(a), and denied it on the merits (*id.* at 23–24). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam on September 25, 2007, with the mandate issuing November 27, 2007. *See* Docket Sheet, Albritton v. State, Case No. 1D07-1877 (Fla. 1st DCA).

On April 23, 2007, while Petitioner's second Rule 3.850 motion was pending, Petitioner filed a petition for writ of habeas corpus with the First DCA, which the court construed as a petition

alleging ineffective assistance of appellate counsel (Docs. 14, Exs. N, O).  The First DCA denied the petition on the merits on May 24, 2007.  <u>Albritton v. State</u>, 957 So. 2d 701 (Fla. 1st DCA May 24, 2007).

Petitioner filed the instant federal habeas action on June 11, 2007 (Doc. 1 at 1).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to

---

[1]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529

U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, — U.S. — 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    <u>Ground One:  "State court fact-finding determination [sic] was 'not a full and fair' [sic] proceeding to deny Petitioner's 3.850 motion.</u>

<u>Ground Five:  "Trial court erred in denying Petitioner due process at his evidentiary hearing."</u>[2]

Petitioner claims that the trial court denied his Sixth Amendment right to counsel in the first post-conviction proceeding by denying his request for a continuance of the evidentiary hearing, thereby requiring him to proceed pro se (Doc. 6 at 4–4A, 5B–5C).  Petitioner states he received a copy of the order setting the evidentiary hearing approximately nine "working days" prior to the date of the hearing (Doc. 21 at 2).  He states he contacted his family, and on the Friday before the evidentiary hearing, which was held on Monday, February 27, 2006, his family hired a lawyer to represent him (*id.* at 2–3).  Petitioner states counsel notified the State and the trial judge's office that he would represent Petitioner if the court would grant a continuance of the hearing, but the trial

---

[2]The court has consolidated some of Petitioner's claims for organizational purposes.

judge stated he would not grant a continuance and required Petitioner to proceed pro se (*id.* at 3–5). Petitioner additionally states he was denied due process during the hearing because although he called his mother as a witness, the trial judge and the State questioned her, but Petitioner did not (*id.* at 3–4). He also appears to suggest he was denied due process because the trial court held an evidentiary hearing on only one claim and summarily denied the other (Doc. 6 at 4–4A).

Respondent states Petitioner presented these claims to the state courts as Issue Three in his initial brief on appeal of the denial of his first Rule 3.850 motion (Doc. 14 at 6). Respondent contends there is no clearly established Supreme Court law on this issue (*id.* at 12). Furthermore, Petitioner has no constitutional right to counsel in state post-conviction proceedings, and in the context of a criminal trial, a defendant's right to specific retained counsel of his choice may be overridden based upon scheduling concerns (*id.* at 7–12). Therefore, Petitioner is not entitled to federal habeas relief.

        1.      Clearly Established Supreme Court Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Distinct from the right to appointed counsel in criminal trials is "the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624–25, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989). The Supreme Court has thus held that a defendant who does not require appointed counsel has a Sixth Amendment right to choose who will represent him and to be heard by counsel. *See* United States v. Gonzalez-Lopez, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006) (citations omitted); Chandler v. Fretag, 348 U.S. 3, 9–10, 75 S. Ct. 1, 99 L. Ed. 4 (1954) (the right to be heard by counsel includes "a reasonable opportunity to employ and consult with counsel; otherwise the right to be heard by counsel would be of little worth.").

Additionally, the Supreme Court has recognized a trial court's wide latitude in balancing the right to counsel of choice against the demands of its calendar. Morris v. Slappy, 461 U.S. 1, 11–12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983). With regard to the granting of continuances, in the context of a criminal trial, the Supreme Court held:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964) (citations omitted). To establish that a denial of a continuance was reversible error, Petitioner must show that the denial caused "specific substantial prejudice." Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1326 (11th Cir. 2002) (citation omitted).

However, "[t]here is no constitutional right to an attorney in state post-conviction proceedings," see Coleman v. Thompson, 501 U.S. 722, 752, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (citing Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L. Ed. 2d 539 (1987)), and there is no clearly established Supreme Court law recognizing the right to counsel of choice in state collateral proceedings. Furthermore, there is no clearly established Supreme Court law extending due process protections with regard to the denial of continuances to state post-conviction proceedings.

### 2.    Federal Review of State Court Decision

On direct appeal of the trial court's denial of Petitioner's first Rule 3.850 motion, Petitioner argued that the trial court erred by summarily denying one of his claims without an evidentiary hearing and by denying a continuance and, thereby, requiring Petitioner proceed pro se (see Doc. 14, Ex. G). Although the First DCA's affirmance of the conviction without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable. See Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

The record shows that Petitioner raised two issues in his first Rule 3.850 motion: (1) his guilty plea was involuntary because he was misadvised and misled by defense counsel, and (2) the

trial court violated due process by accepting his plea without inquiring as to the factual basis for the plea and the voluntariness of the plea (Doc. 14, Ex. F at 97–110).  The issue that was the subject of the limited evidentiary hearing was the first claim, that Petitioner received ineffective assistance of counsel based upon counsel's erroneous advise during the plea process (*id.* at 117–18).  At the beginning of the evidentiary hearing, Mr. Hill, an attorney contacted by Petitioner's family to represent him at the hearing, stated that Petitioner's mother had contacted him the previous Friday, three days before the hearing, and asked him to represent Petitioner, but he told her he would not do so unless the evidentiary hearing was continued (*id.* at 120).  Mr. Hill then asked the court for a continuance and reiterated that he would be unable to represent Petitioner unless the court granted the continuance (*id.*).  The trial judge responded that the issue that was the subject of the hearing was simple, Petitioner was claiming that his plea was involuntary because it was based upon defense counsel's promise that an appeal of the trial court's denial of a motion to suppress would be successful (*id.* at 121–22).  The judge stated that Petitioner's former counsel was present at the hearing, so a continuance for the purpose of questioning him was not necessary, but if Petitioner wished to present other evidence or witnesses that were not available that day, the hearing could be bifurcated so that the additional evidence could be presented at a future time (*id.* at 122).  Mr. Hill responded that although he had reviewed the court file, he had not had an opportunity to confer with Petitioner or review the Rule 3.850 motion (*id.* at 122–23).  The judge questioned Mr. Hill as to how Petitioner's case would be prejudiced if he (Mr. Hill) was given an opportunity to confer with Petitioner and then required to question former defense counsel that day, but given an opportunity to present any additional evidence at a later date (*id.*).  Mr. Hill responded that he was not comfortable representing Petitioner at the hearing that day (*id.* at 123–24).  The judge then determined that if Mr. Hill would not represent Petitioner at the hearing that day, Petitioner would be required to proceed pro se (*id.* at 124–25).

The State questioned its sole witness, Petitioner's former counsel, Mr. Richbourg (*id.* at 125–29).  The court asked Petitioner if he wished to question his former counsel, and Petitioner responded in the negative (*id.* at 129).  The judge asked Petitioner if he wished to present his own testimony or the testimony of any other witnesses, and Petitioner responded that he wished to testify (*id.* at 129–30).  Petitioner testified and then called his mother, Linda Johnson, as a witness (*id.* at

130–38).  The judge questioned Ms. Johnson and the State questioned her (*id.* at 139–50).  The judge asked Petitioner if he wished to ask her any questions, and Petitioner responded no (*id.* at 150).

To the extent Petitioner claims he was denied the right to his choice of counsel under the Sixth Amendment, he has failed to show that the Supreme Court has recognized this right in state post-conviction proceedings.  Furthermore, the Supreme Court's recognition of no constitutional right to an attorney in state post-conviction proceedings indicates that the Court would not extend the right to counsel of one's choice to state post-conviction proceedings.  Therefore, Petitioner has failed to establish that the First DCA's denial of his Sixth Amendment claim was contrary to or an unreasonable application of clearly established Supreme Court law.

To the extent Petitioner claims that the post-conviction trial court violated his due process rights by denying his request for a continuance, questioning Petitioner's mother, and summarily denying his claim of trial court error in accepting his plea, his claims are not cognizable in federal habeas because they do not go to the cause of his detention.   In the Eleventh Circuit, claims concerning the manner in which a state court handled a post-conviction proceeding, including the court's failure to hold an evidentiary hearing on a Rule 3.850 motion, are not cognizable claims for federal habeas relief.  *See* Anderson v. Sec'y for the Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (denying the petitioner's claims the state post-conviction court violated his constitutional rights by failing to conduct an evidentiary hearing with respect to the State's failure to establish the *corpus delicti* of murder and with respect to ineffective assistance of counsel for failure to object to the penalty phase jury instructions); Spradley v. Dugger, 825 F.2d 1566 (11th Cir. 1987) (claim that state court erred in post-conviction proceeding by denying motion without holding an evidentiary hearing or attaching portions of the record did not state basis for habeas relief because it went to issues unrelated to the cause of petitioner's detention).

Furthermore, with regard to the state post-conviction court's failure to grant a continuance, Petitioner has failed to demonstrate that the state court decision was contrary to or an unreasonable application of Supreme Court law.   Initially, the post-conviction judge offered Mr. Hill an opportunity to consult with Petitioner that day and even offered to bifurcate the proceeding by going forward with only the State's case that day, which included questioning of only one witness, and setting the presentation of the defense's case for a later date.  Additionally, Petitioner failed to

establish that the denial of the continuance caused "specific substantial prejudice."  The subject of the evidentiary hearing was limited to one issue, whether the advice provided by Petitioner's former counsel during the plea process was erroneous or misleading.  Presentation of evidence on this issue was simple and straightforward as the only evidence was testimony of Petitioner, his former counsel, and Petitioner's mother.  The record establishes that the state post-conviction court provided Petitioner an opportunity to testify on his own behalf and question the other two witnesses. Petitioner does not allege that any additional, helpful evidence would have been adduced from the existing witnesses if the court had granted a continuance of the hearing, nor does he allege that additional favorable evidence existed which he was unable to present that day but could have presented if the proceedings had been continued to another day.  In the absence of any showing that he suffered prejudice as a result of the court's failure to grant a continuance, Petitioner has failed to establish that the state court's denial of his due process claims was contrary to or an unreasonable application of Supreme Court law.

> B.    <u>Ground Two: "Trial court erred when it fail [sic] to suppress evidence obtained in violation of Florida rules and law."</u>

Petitioner claims the trial court denied him due process by denying the defense's motion to suppress twenty-four (24) grams of cocaine (Doc. 6 at 4–4B).  Petitioner states he was arrested on a VOP warrant, and a police search incident to the arrest resulted in discovery of six (6) grams of cocaine in Petitioner's vehicle (*id.* at 4).  Petitioner does not contest the legality of the search of his vehicle (*id.* at 4B).  Petitioner states that after he was searched and handcuffed, he was transported to the police station and handcuffed to a chair in an interview room (*id.* at 4–4B).  Petitioner alleges Officer Bauer strip searched him, which resulted in discovery of twenty-four (24) grams of cocaine hidden in Petitioner's buttocks (*id.*).  Petitioner contends Officer Bauer admitted that he never obtained permission to conduct the search from a supervisor, in violation of police procedures, Florida law, and due process (*id.* at 4B).

Respondent states that although Petitioner challenged the search on direct appeal of his conviction, the only reference to federal law was the following statement in the Summary of the Argument in his initial brief, "This strip search was illegal, violated Florida Statutes 901.211(4) and the Fourth Amendment" (Doc. 14 at 13).  Respondent states Petitioner's substantive argument was

based upon state law and did not mention the Constitution, federal law or federal cases (*id.*). Furthermore, Petitioner is procedurally barred from returning to state court; therefore, any federal claim is procedurally defaulted for purposes of federal habeas review (*id.*). Respondent additionally contends that Petitioner's claim, that is, the necessity of supervisory authorization prior to conducting a strip search, is purely a question of state law, specifically, Florida Statutes section 901.211 (*id.*). Therefore, it does not provide a basis for federal habeas relief.

In his traverse, Petitioner contends that a strip search conducted in violation of "due process" of Florida law essentially establishes police misconduct and constitutes a Fourth Amendment violation (Doc. 21 at 6–7). He further argues that because both state and federal law require suppression of evidence obtained from an unlawful search, he presented a federal claim to the state court in his brief on direct appeal (*id.*). He states his reference to the Fourth Amendment was sufficient to adequately present a federal claim (*id.* at 8). As to the merits of his Fourth Amendment claim, Petitioner states the police initiated the removal of his clothing by threatening that a strip search was inevitable (*id.* at 7). He states that the officer had not obtained supervisory authorization to conduct a strip search, as required by Florida law, so the search was illegal, and the evidence obtained therefrom was subject to suppression (*id.* at 6).

The undersigned concludes that Petitioner fairly presented his Fourth Amendment claim to the state courts, however, his Fourth Amendment claim is not cognizable on federal habeas review because Petitioner had a full and fair opportunity to litigate the claim in state court. Petitioner claims he was strip searched at the police station in violation of the Fourth Amendment. Since this claim arises under the Fourth Amendment exclusionary rule, however, the power of this court to grant habeas relief depends upon whether Petitioner was afforded a full and fair opportunity to litigate this issues in the Florida courts. Indeed, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was or would have been introduced at trial where the State has provided Petitioner an opportunity for full and fair litigation of the Fourth Amendment claim. Stone v. Powell, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976); Huynh v. King, 95 F.3d 1052, 1058 (11th Cir. 1996). This bar applies without regard to whether the defendant actually availed himself of the opportunity. Huynh, 95 F.3d

at 1058.  Additionally, this rule applies to a conviction based upon a guilty plea, as well as a conviction following a trial.  *See* Stanley v. Wainwright, 604 F.2d 379, 381 (5th Cir. 1979).[3]

The Eleventh Circuit has interpreted "full and fair consideration" of a Fourth Amendment claim to include at least one evidentiary hearing in the trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute.  Tukes v. Dugger, 911 F.2d 508, 513–14 (11th Cir. 1990) (citations omitted).    In the instant case, Petitioner does not allege he did not receive "full and fair consideration" of his Fourth Amendment claim in the state courts.  Indeed, the record conclusively establishes he received such consideration by virtue of the evidentiary hearing in the trial court which resulted in a clear finding on the essential issue of whether Petitioner was searched, that is, that Petitioner was not strip searched because he voluntarily removed his pants and retrieved the cocaine from his buttocks (*see* Doc. 14, Ex. A at 53–98), and full consideration by the First DCA (*see* Doc. 14, Exs. B–E).  Therefore, pursuant to Powell, Petitioner is not entitled to federal habeas relief on this claim.

C.     Ground Three: "Ineffective assistance of counsel for misleading and misadvising Petitioner into entering a plea of guilty."

Ground Four:   "Trial court erred by failing to make a determination of the voluntariness of Petitioner's open plea."

In Ground Three, Petitioner claims that his counsel performed deficiently by advising him prior to the suppression hearing that if the judge did not dismiss the case based upon the illegal strip search, Petitioner would have to plead nolo contendere (Doc. 6 at 5–5B).  Petitioner states he told counsel that he did not want to plead guilty, and counsel responded as follows:

If you plea nolo contendere in open court, I guarantee you I will win this thing on appeal and you will only have the probation violation to serve.  But, if you go to trial, I assure you they will convict you.  Who do you think they are going to believe, you are [sic] the police?  And when they convict you, and they will, the State will ask that you be given the maximum sentence of life in prison.  The only way I can help you is that you enter an open plea and let me win this thing on appeal.

---

[3]Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 shall be binding as precedent on the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

(Doc. 6 at 5A).  Petitioner states he relied on counsel's erroneous guarantee that he would be successful on appeal if the trial court denied the motion to suppress in entering his plea, and he would not have pleaded guilty if counsel had not made this promise of a successful appeal (*id.*).

In Ground Four, Petitioner claims that the trial court denied him due process by failing to determine the voluntariness of his plea (Doc. 6 at 5).  Petitioner contends that Rule 3.172(c) of the Florida Rules of Criminal Procedure and Rule 11 of the Federal Rules of Criminal Procedure require that the court conduct a colloquy with the defendant and determine on the record that the plea is free and voluntary, but the court failed to comply with this requirement (*id.* at 5B; Doc. 21 at 11–12). Petitioner states if the court had performed this requirement, the court would have discovered that the basis of Petitioner's plea was defense counsel's false promise of success on appeal and inducement of fear that Petitioner would be convicted and sentenced to life imprisonment if he went to trial (*id.*).

Respondent concedes that Petitioner exhausted both claims in the state courts by raising them in his first Rule 3.850 motion (Doc. 14 at 13, 15).  Respondent contends the state court decision denying the claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of Supreme Court law (*id.* at 13–26).

1.      Clearly Established Supreme Court Law

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant.  North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970) (citing Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969)).  A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available.  *See* Henderson v. Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2258, 49 L. Ed. 2d 108 (1976).  "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.  Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense."  Henderson, 426 U.S. at 645 n. 13 (citation

omitted); <u>Boykin</u>, 395 U.S. at 243 & n.5. A defendant receives 'real notice' of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements. <u>Henderson</u>, 426 U.S. at 645–47. The extent to which the elements must be explained varies with the circumstances, but at the very least, due process requires that the defendant receive a description of the "critical elements" of the charged offense, such as the element defining the requisite intent. *Id.*, 426 U.S. at 644, 647 n.18. Additionally, the accused should understand how his conduct satisfies the elements of the charge, and this entails that the accused have sufficient background information about the facts of his case to make an informed decision about the case against him.

Due process does not require that the defendant, in pleading guilty, be informed of each element of the crime <u>at the plea hearing</u>. *See* <u>Henderson</u>, 426 U.S. at 647 (emphasis added). The defendant may receive detailed information about the elements of the offense beforehand, most commonly through his attorney. *See id.* Thus, for a plea to be knowing and voluntary, the defendant must be informed of the elements of the offense either at the plea hearing or on some prior occasion, and he must understand them. *See id.*

Due process also requires that a defendant's factual guilt of the crime charged be established. In a guilty plea situation, this requirement may be satisfied by a defendant's own solemn admission in open court that he is in fact guilty of the offense with which he is charged. <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 92 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973). However, an express admission of guilt is not a constitutional requisite to the imposition of criminal penalty. <u>Alford</u>, 400 U.S. at 37. "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* When a defendant "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt," a plea may be accepted even if accompanied by protestations of innocence." *Id.* The purpose of placing the facts on the record is not to establish guilt as a basis for a judgment of conviction, rather it is to aid in the constitutionally required determination that the defendant entered the plea intelligently and voluntarily, because it demonstrates a defendant's recognition that the evidence negates his claim of innocence and that he has nothing to gain by a trial and much to gain by entering a plea. *See* <u>McCarthy v. United States</u>, 394 U.S. 459, 467, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969).

However, a factual basis has been recognized as necessary only when a defendant proclaims his innocence and pleads guilty. *See* <u>Alford</u>, 400 U.S. at 38 & n.10.

"<u>Alford</u> is based on the fact that the defendant could intelligently have concluded that, whether he believed himself to be innocent and whether he could bring himself to admit guilt or not, the State's case against him was so strong that he would have been convicted anyway." <u>Henderson</u>, 426 U.S. at 648 n.1 (White, J., with whom Stewart, J., Blackmun, J. and Powell, J. joined, concurring). "[A] defendant cannot intelligently reach that conclusion, if he does not know the elements of the crime to which he is pleading and therefore does not know what the State has to prove; and his ignorant decision to plead guilty under such circumstances is not a reliable indication that he is in fact guilty." *Id.*

When a defendant challenges a guilty plea based upon allegations of ineffective assistance of counsel, the two pronged standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) applies. The two components of an ineffectiveness claim under <u>Strickland</u> are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. <u>Strickland</u>, 466 U.S. at 697. The focus of inquiry under the performance prong of the <u>Strickland</u> standard is whether counsel's assistance was "reasonable considering all the circumstances." *See* <u>Strickland</u>, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently

made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S.Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

Furthermore, "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each.  Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (citations omitted).  In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting McMann, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  Stano, 921 F.2d at 1150–51.  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  Hill, 474 U.S. at 59.  Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different.  Id. at 59–60.  While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must come forth with objective evidence to show that but for counsel's errors he would not have accepted the plea offer, and would have insisted on going to trial.  See Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991).  Conclusory, after-the-fact statements that Petitioner would not have pled guilty do not meet this requirement, nor is it sufficient to say that

Petitioner would have received a less harsh sentence had he not accepted the plea offer. *See* Diaz, 930 F.2d at 835; *see also* Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

        2.      Federal Review of State Court Decision

Petitioner raised both of these claims in his Rule 3.850 motion (Doc. 14, Ex. F at 100–08). The trial court held an evidentiary hearing on the limited issue of whether Petitioner entered his plea based upon defense counsel's promise or guarantee that counsel would prevail in an appeal of the trial court's denial of the motion to suppress (*see id.* at 117–18). In the written opinion denying Petitioner's Rule 3.850 motion, the trial court conducted a merits review of Petitioner's claims (*id.* at 170–73). The state court made the following factual findings in its written opinion:

> At evidentiary hearing [sic], Defendant remained steadfast in accordance with his sworn motion that counsel promised him success on appeal, causing him to enter his plea. Defendant's mother, Linda Johnson, also testified that Defendant's attorney, William Richbourg, told her that "it would be won on appeal." However, on cross-examination, Ms. Johnson indicated that she was distressed mentally and physically on the day of the plea and sentencing, and did not recall specifically whether she and Defendant had discussed the alleged promise by counsel since the time of Defendant's sentencing.
>
> Mr. Richbourg also testified at evidentiary hearing [sic], and stated that he advised Defendant that he believed Defendant had a meritorious case on appeal. Mr. Richbourg did not recall meeting with Defendant's mother. However, Mr. Richbourg testified **unequivocally** that he had never guaranteed success on appeal to Defendant, his mother, or to any other client.
>
> As to Defendant's first claim, the Court finds credible Mr. Richbourg's testimony that he made no promises or guarantees with regard to Defendant's success on appeal. Therefore, Defendant has failed to meet his burden with regard to his claim that counsel was ineffective for inducing him to plea by promising him success on appeal, and he is not entitled to relief on this basis.
> . . . .
> Defendant's claim with regard to his belief that he faced a life sentence is refuted by the record. Although her memory was not clear, Defendant's mother testified at evidentiary hearing [sic] that she recalled counsel mentioning that Defendant faced a maximum of 30 years in prison. Additionally, it is clear that Defendant was advised on the record by both the Court and counsel, prior to the formal entry of his plea, that he faced a maximum sentence of 30 years for the trafficking count, with an additional five years on the second case before the Court

for sentencing (not a subject of the instant motion), and one year for the misdemeanor.[FN 3].

Defendant's claim that the Court failed to find a factual basis and make other pertinent inquiries is similarly without merit. Defendant entered his plea of guilty on the same day that the Court heard extensive testimony regarding a motion to suppress the cocaine which formed the basis of the charges in the instant case. While Fla. R. Crim. P. 3.172 does require that the Court make a finding that a proper factual basis exists, it also provides that "[f]ailure to follow any of the procedures in this rule shall not render a plea void absent a showing of prejudice." See Fla. R. Crim. P. 3.172(i). Defendant has failed to demonstrate that he was prejudiced in any way by the Court's failure to find a factual basis for the record, and indeed Defendant admitted to the Court during the hearing that he sold drugs "to support my habit."[FN 4]. Therefore, Defendant is not entitled to relief on the basis of this claim.

(Doc. 14, Ex. F at 171–73) (emphasis in original).

Petitioner contends the trial court's finding that Mr. Richbourg did not promise or guarantee Petitioner's success on appeal of the suppression issue was an unreasonable determination of the facts because Mr. Richbourg admitted at the evidentiary hearing that he advised Petitioner that "he had a meritorious appeal," "good appeal," "I told him I thought we should win," and "I thought we had a valid appeal" (Doc. 21 at 8). When Mr. Richbourg was asked, "So it is your testimony here today that you never guaranteed him success on appeal?", he answered, "No, I told him I thought we should win. I believe I remember saying that." (id. at 9). Petitioner additionally contends that his mother's testimony that Mr. Richbourg guaranteed a successful appeal rebuts the state court's factual finding that his mother testified that she did not specifically recall whether she discussed counsel's alleged promise (id. at 9–10).

Federal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). However, when a state court's adjudication of a habeas claim "result[s] in a decision that [i]s based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), the federal court is not bound to defer to unreasonably found facts or to the legal conclusions that flow from them. See Jones v. Walker, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (citing Taylor v. Maddox, 366 F.3d 992, 1008 (9th Cir. 2004) ("When we determine that state-court fact-finding is unreasonable, . . . we have an obligation to set

those findings aside . . . ."); Panetti v. Quarterman, — U.S. —, 127 S.Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007) (declining to apply AEDPA deference when state court made unreasonable determination of law under 28 U.S.C. § 2254(d)(1))).

Upon review of the transcript of the evidentiary hearing, the undersigned concludes that the record supports the state court's finding that Mr. Richbourg testified unequivocally that he had never guaranteed success on appeal to Defendant, his mother, or to any other client.  Petitioner is correct that the record shows that Mr. Richbourg admitted at the evidentiary hearing that he advised Petitioner that "he had a meritorious appeal," "good appeal," "I told him I thought we should win," and "I thought we had a valid appeal" (*see* Doc. 14, Ex. F at 128–29).  However, Mr. Richbourg also testified, "I noticed in his 3.850 he alleges that I guaranteed him he was going to win on appeal.  I've been in this stuff 38 years, I've never guaranteed anybody anything except I would do the best I could.  So that's, that didn't happen" (*id.* at 128).  Furthermore, although Petitioner construes the following exchange as evidence that Mr. Richbourg testified that he was <u>not</u> testifying that he did not guarantee success:

> Q.      So it is your testimony here today that you never guaranteed him success on appeal?
>
> A.      No, I told him I thought we should win.  I believe I remember saying that.

(*id.* at 128), this testimony is more reasonably construed as Mr. Richbourg's stating that he never guaranteed Petitioner success on appeal but told him he believed they "should" win.  This is reinforced by Mr. Richbourg's rebuttal testimony:

> I've never guaranteed anybody ever on how things — I may have guaranteed him
> that we were going to lose if we went to trial because that evidence is going to come
> in and how are we going to defend that, you know.  Other than that, there's no way
> I would have guaranteed anybody what an appellate court is going to do.

(Doc. 14, Ex. F at 155).  Therefore, the statements identified by Petitioner do not clearly rebut the state court's factual finding that Mr. Richbourg testified unequivocally that he had never guaranteed success on appeal to Petitioner.

Additionally, the record supports the state court's determination that Mr. Richbourg's testimony that he made no promises or guarantees regarding success of the appeal was more credible than Ms. Johnson's testimony that Mr. Richbourg told her that "it would be won on appeal." Although Ms. Johnson testified that after the plea and sentencing hearing, Mr. Richbourg guaranteed

her that he would be successful on Petitioner's appeal, she also testified that she was "physically and mentally upset" when she talked with Mr. Richbourg (*see* Doc. 14, Ex. F at 141–44), and it was not unreasonable for the Rule 3.850 court to consider the witness's state of mind in assessing her memory of the events that occurred on the day of the plea and sentencing hearing.  Therefore, Petitioner has failed to demonstrate that the state court unreasonably determined the facts relevant to Petitioner's claims.  Accordingly, this court owes the state court's findings deference under the AEDPA, and Petitioner may not succeed on his claims unless he establishes that the state court decision was contrary to or an unreasonable application of Supreme Court law.

The state court did not cite a state or federal case for the legal standard governing Petitioner's claims, but the standard applied by the court with regard to Petitioner's ineffective assistance of counsel claim was whether Petitioner demonstrated that his counsel induced him to plead guilty by promising him success on appeal or misadvising him that he would receive a life sentence if convicted.  This rule does not contradict the Hill and Strickland standards; rather, it is consistent with those precedents.  *See* Yordan v. Dugger, 909 F.2d 474, 478–79 (11th Cir. 1990) (to prevail on merits of claim of involuntary plea due to misrepresentations of counsel, habeas petitioner must prove:  (1) that the claimed misinformation was given to him by his attorney; (2) that his counsel's performance fell below an objective standard of reasonableness; and (3) that he would not have pleaded guilty and would have insisted on going to trial had he been properly informed by counsel); *see also* Early, 537 U.S. at 8 (a state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent); Parker v. Sec'y of Dep't of Corr., 331 F.3d 764, 775–76 (11th Cir. 2003) (same).  Furthermore, the state court did not arrive at a result different from Supreme Court precedent on facts materially indistinguishable from a decision of the Supreme Court.  Therefore, the state court decision was not contrary to clearly established Supreme Court law.  Additionally, in light of the state court's factual findings that Mr. Richbourg did not guarantee Petitioner success on appeal, and he correctly advised Petitioner of the maximum sentence he faced on the charges, Petitioner has failed to show that the state court's denial of his ineffective assistance of counsel claim was an unreasonable application of Supreme Court law.

Petitioner has also failed to demonstrate entitlement to relief on his claim that the trial court denied him due process by failing to determine the voluntariness of his plea and failing to place a

factual basis for the charge on the record.  As previously discussed, Petitioner contends that Rule 3.172(c) of the Florida Rules of Criminal Procedure and Rule 11 of the Federal Rules of Criminal Procedure require that the court conduct a colloquy with the defendant and determine on the record that the plea is free and voluntary, but the court failed to comply with this requirement.  Petitioner states if the court had performed this requirement, the court would have discovered that the basis of Petitioner's plea was defense counsel's false promise of success on appeal and inducement of fear that Petitioner would be convicted and sentenced to life imprisonment if he went to trial.

The plea colloquy, provided in Rule 11 of the Federal Rules of Criminal Procedure, constitutes the constitutional minimum requirements for a knowing and voluntary plea for federal courts, but that rule is not binding on state courts.  <u>Stano v. Dugger</u>, 921 F.2d 1125, 1141 (11th Cir. 1991) (citing <u>Owens v. Wainwright</u>, 698 F.2d 1111, 1113 (11th Cir. 1983) ("Although federal law requires the judge personally to tell the defendant of the mandatory minimum sentence, Fed. R. Crim. P. 11(c)(1), Florida law does not.")).  A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process:  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."  <u>Stano</u>, *supra* (citations omitted).  "[W]hen it develops that the defendant was not fairly apprised of its consequences" or when "the defendant pleads guilty on a false premise," a guilty plea violates the Due Process Clause.  <u>Finch v. Vaughn</u>, 67 F.3d 909, 914 (11th Cir. 1995) (quoting <u>Mabry v. Johnson</u>, 467 U.S. 504, 509, 104 S. Ct. 2543, 2547, 81 L. Ed. 2d 437 (1984)).

The inquiry into whether the plea is made intelligently does not mean that the court must determine whether the defendant is making a "smart" decision by pleading guilty.  <u>Stano</u>, 921 F.2d at 1142.  Instead, "[i]n order for a guilty plea to be entered knowingly and intelligently, the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available."  <u>LoConte v. Dugger</u>, 847 F.2d 745, 751 (11th Cir. 1988).  The defendant does not necessarily need to be told the nature of the offense and elements of the crime at the actual plea proceedings; a knowing and intelligent guilty plea may be entered on the basis of the receipt of this

information, generally from defense counsel, before the plea proceedings.  Stano, *supra* (citations omitted).

In the instant case, in light of the state court's factual findings that Petitioner's counsel did not guarantee Petitioner success on appeal, and he correctly advised Petitioner of the maximum sentence Petitioner faced on the charges, which were the two grounds asserted by Petitioner as rendering his plea involuntary, Petitioner cannot show that the state court's acceptance of his guilty plea violated due process.  Furthermore, as noted by the state court, Petitioner entered his plea of guilty on the same day that the state court heard extensive testimony regarding a motion to suppress some of the cocaine found in Petitioner's possession, and that testimony provided the factual basis for the trafficking charge as well as the possession of marijuana charge (*see* Doc. 14, Ex. F at 31–84).  The state court record establishes that Petitioner attended that hearing and, therefore, was aware of the factual basis for the charges.  Moreover, Petitioner's guilty plea was not accompanied by any protestations of innocence; in fact, Petitioner stated during the plea and sentencing hearing that he sold drugs to support his own drug habit (Doc. 14, Ex. A at 103).  Therefore, placing a factual basis on the record was not constitutionally required.  *See* Alford, 400 U.S. at 38 & n.10. Accordingly, Petitioner is not entitled to federal habeas relief on this claim of trial court error.

D.    Ground six: "Ineffective assistance of appellate counsel, who was also trial counsel, in violation of Petitioner's 6th and 14th rights of the United States Constitution."

Petitioner claims he received ineffective assistance of appellate counsel because counsel failed to raise the issue of police misconduct in combining the amounts of cocaine found in Petitioner's car (five grams of crack cocaine and one gram of powder cocaine) and on his person (twenty-four grams of powder cocaine) to reach the minimum quantity of cocaine necessary to charge him with trafficking in cocaine (*see* Doc. 6 at 5D–5F).  Petitioner states that after he was arrested on the VOP warrant at a store, law enforcement officers searched his car and discovered five grams of crack cocaine and one gram of powder cocaine (*id.*).  Petitioner states that after he was transported to the sheriff's department and produced a plastic bag containing twenty-four grams of powder cocaine from his buttocks, one of the officers poured the cocaine discovered in the car into the bag containing the twenty-four grams of cocaine and said, "Bingo!  I got you.  Ain't no more

possession. It's trafficking. You got thirty grams here son, and the law says over twenty-eight grams is trafficking and by God that is what I am going to give you." (*id.* at 5E).

Respondent concedes Petitioner raised his claim of ineffective assistance of appellate counsel in his habeas petition before the First DCA (Doc. 14 at 26). Respondent contends Petitioner has failed to establish that the state court decision was contrary to or an unreasonable application of Supreme Court law.

1.      Clearly Established Supreme Court Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that enunciated in Strickland. *See* Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted). Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

2.      Federal Review of State Court Decision

Although the state court's denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable. *See* Helton, 233 F.3d at 1326-27; Delgado, 223 F.3d at 982; Hannon, 109 F.3d at 335. In the instant case, Petitioner has failed to show that the state court decision was clearly contrary to or an unreasonable application of Strickland.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate

counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits.  Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal.  Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

In the instant case, the state court record establishes that the only issue preserved for appellate review was the issue of the trial court's denial of the motion to suppress based upon an illegal search of Petitioner's person; trial counsel did not preserve for appeal the issue of whether lesser amounts of drugs seized from a defendant at different locations may be combined to reach the minimum quantity necessary to support a trafficking charge.  Therefore, appellate counsel's failure to raise the issue was not constitutionally deficient.

To the extent Petitioner asserts a related claim of ineffective assistance of trial counsel based upon trial counsel's failure to properly investigate the alleged police misconduct, the claim is procedurally barred from federal habeas review.  A state habeas petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, or that a fundamental miscarriage of justice will result.  Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Bailey v. Nagle, 172 F.3d 1299 (11th Cir. 1999); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).  A state court decision based on state law grounds that are independent of federal law and adequate to support the judgment may create a procedural default barring federal habeas review.  Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  Thus, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the federal claims are barred, the federal court shall respect that decision.  Bailey, 172 F.3d 1299 (citation omitted).  In reviewing the state court's judgment, this court must first ask whether the last state court rendering judgment clearly and expressly stated it was relying on state procedural rules to resolve the federal claim.  Second, this court must determine whether the state court's decision on the procedural issue rested entirely on state law grounds and was not intertwined with an interpretation of federal law.  Third, this court must determine whether

the state procedural rule was firmly established and regularly followed.  *See* Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).

To establish "cause" sufficient to overcome the procedural bar, Petitioner must show the existence of "an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim" which prevented him from raising the claim. McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  In order to show prejudice, Petitioner must show not merely that the error created a possibility of prejudice, but that it worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions.  *See* United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982).

The state court record shows that Petitioner raised this ineffective assistance of counsel claim in his second Rule 3.850 motion, and the state court dismissed the claim as untimely and procedurally barred (*see* Doc. 14, Ex. K at 23–24).  The record also confirms that Petitioner did not raise the claim in his first Rule 3.850 motion.  In the written opinion dismissing the second Rule 3.850 motion, the trial court found as fact that Petitioner previously filed a Rule 3.850 motion on August 23, 2005, and the motion was denied on the merits in an order issued on March 10, 2006 (*id.* at 22).  The court further found that the claims raised by Petitioner in his second Rule 3.850 motion were known to him at the time of sentencing, and Petitioner failed to show cause for his failing to raise them in his first motion (*id.* at 23).  Therefore, the court dismissed the motion as within the meaning of Rule 3.850(f), the procedural rule permitting the court to dismiss a second or successive Rule 3.850 motion if the judge finds that it alleges new and different grounds for relief, and the failure of the movant to assert those grounds in a prior motion constituted an abuse of the post-conviction process (*id*. at 23–24).  *See* Fla. R. Crim. P. 3.850(f).  The First DCA affirmed the trial court's decision per curiam.  *See* Docket Sheet, Albritton v. State, Case No. 1D07-1877 (Fla. 1st DCA).

The last state court rendering judgment clearly and expressly stated it was relying on state procedural rules to resolve the federal claim.  *See* Yist v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991) (although a procedural bar may be removed if the last state

court to be presented with a claim ignores the bar and reaches the merits, when the trial court's denial of a claim on procedural grounds is affirmed by the appellate court per curiam and without opinion, the appellate decision is deemed to have affirmed the procedural bar).  Additionally, the state court's decision on the procedural issue rested entirely on state law grounds, namely, Rule 3.850(f), and this rule is firmly established and regularly followed by Florida courts.  *See* Fla. R. Crim. P. 3.850(f); *see also* Frazier v. State, 898 So. 2d 1183, 1183–84 (Fla. 3d DCA 2005) (barring as successive claims that could have and should have been made in previous post-conviction motion); Washington v. State, 876 So. 2d 1233, 1234 (Fla. 5th DCA 2004) (same).  Therefore Petitioner's claims are procedurally barred from federal review unless he satisfies the "cause and prejudice" or "fundamental miscarriage of justice" exception to the procedural bar.

Petitioner does not allege cause for his procedural default.  Additionally, the court notes that in Petitioner's second Rule 3.850 motion, he blamed his lack of education and reliance on an inmate law clerk for his failure to raise the claims in his first Rule 3.850 motion (*see* Doc. 14, Ex. K at 2). It is well established that a petitioner's ignorance of the law cannot excuse a procedural default.  *See* Tower v. Phillips, 7 F.3d 106, 211 (11th Cir. 1993) (ignorance of available post-conviction remedies cannot excuse a procedural default) (citations omitted).  Therefore, Petitioner has failed to establish he is entitled to review of his claims under the "cause and prejudice" exception to the procedural bar.

Additionally, Petitioner has failed to establish entitlement to review under the fundamental miscarriage of justice exception.  Although he argues he is legally innocent of the trafficking charge by virtue of the improper combining of quantities of cocaine to substantiate the charge, the sufficiency of the evidence to support the charge does not satisfy the requisite showing of factual innocence necessary to obtain review through the fundamental miscarriage of justice exception, as Petitioner does not allege the existence of new evidence that establishes his innocence, and in fact he admitted on the record that he sold drugs to support his drug habit.  *See* Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995); *see also* House v. Bell, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).  Because Petitioner is no longer able to present Ground Six to the state courts, and he has failed to show the requisite cause to excuse his procedural default or satisfy the fundamental miscarriage of justice exception to the procedural bar, this claim is barred from federal habeas review.

Accordingly, it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 6) be **DENIED**.

At Pensacola, Florida, this <u>5th</u> day of December 2008.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

       **Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**